COURT OF CHANCERY
OF THE
STATE OF DELAWARE

SELENA E. MOLINA
SENIOR MAGISTRATE IN CHANCERY

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE 19801-3734

Report: January 15, 2026
Submitted: January 9, 2026

Raymond J. DiCamillo, Esquire
Susan Hannigan Cohen, Esquire
Danielle I. Bell, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801

William E. Green Jr., Esquire
Halloran Farkas + Kittila LLP
5722 Kennett Pike
Wilmington, DE 19807

Re: *Hayworth Tanglewood IB, LLC v. Hayworth Tanglewood, DST, et al.*,
C.A. No. 2025-0748-SEM

Dear Counsel:

This is a trust dispute through which the defendant allegedly failed to redeem the plaintiff's beneficial interests in a Delaware statutory trust, per the applicable trust agreement and private placement memorandum. This action went through expedited proceedings before the Chancellor and was reassigned to me on October 1, 2025, to hear the remaining motions to stay discovery and dismiss or stay this action. I granted the motion to stay discovery on October 22, 2025 and planned to hear argument on the motion to dismiss or stay today. When counsel for the defendants moved to withdraw, I cancelled argument and now rule on the papers.

For the reasons explained herein, the motion to dismiss or stay is denied and the motion to withdraw is granted. The defendants have 10 days to secure successor counsel and answer the complaint; on day 11, the stay on discovery will be lifted.

## I.  BACKGROUND[1]

This is a trust dispute brought by Hayworth Tanglewood IB, LLC (the "Plaintiff") against Hayworth Tanglewood, DST (the "DST Defendant"), Hayworth Tanglewood ST, LLC (the "Signatory Trustee Defendant," together with the DST Defendant, the "Trust Defendants"), and Hayworth Tanglewood LeaseCo, LLC (the "Master Tenant Defendant," together with the Trust Defendants, the "Defendants"). I begin with a brief summary of the underlying funding arrangements, the relevant agreements, and the parties' disputes.

### A.  The Funding

The DST Defendant is a Delaware statutory trust, formed on May 31, 2022.[2] It was created to acquire and own an apartment complex in Houston, Texas, known as The Hayworth (the "Hayworth Property").[3] The purchase was funded, in part, by

---

[1] The facts are drawn from the Plaintiff's verified complaint. Docket Item ("D.I.") 1 ("Compl.").

[2] Compl. ¶ 16.

[3] *Id.*

the Plaintiff, who made a capital contribution of over $58 million.[4] The remaining portion of the anticipated purchase price was funded by a senior mortgage loan, secured by the Hayworth Property.[5] With that funding, the DST Defendant acquired the Hayworth Property on June 30, 2022, for $105.5 million.[6]

The Plaintiff obtained its capital contribution from its sole parent Versity EquityCo II, LLC, which had borrowed most of the funds from a bridge equity funder (the "Bridge Lender").[7] The Plaintiff's funding has spurned not just this lawsuit but also one in New York. In April 2024, the Bridge Lender sued the DST Defendant, among others, for alleged fraudulent misappropriation of syndication proceeds; that action is pending in the Commercial Division of the New York Supreme Court, in New York County, captioned *KHCA Funding LLC v. Versity Invest, LLC* (the "New York Action"). The Bridge Lender also exercised its right to assume the management of the Plaintiff after the Plaintiff defaulted on the loan; the Bridge Lender became the Plaintiff's manager and controller on June 30, 2025.[8]

---

[4] Compl. ¶ 18.

[5] Compl. ¶ 19.

[6] Compl. ¶ 17.

[7] Compl. ¶ 18.

[8] Compl. ¶ 20.

## B.     The Agreements

This action does not, however, directly arise from the funding or acquisition, but rather from the governing document of the DST Defendant and other related agreements. The DST Defendant is governed by a June 29, 2022 trust agreement (the "Trust Agreement").[9] In the Trust Agreement, the Signatory Trustee Defendant is designated as the "signatory trustee" for the DST Defendant, entrusting it with "a duty to conserve and protect the Trust Property for the benefit of the Investors" and to take "any and all necessary actions . . . to conserve and protect the Trust Property for the benefit of the Investors[.]"[10]

Under the Trust Agreement, the Plaintiff is the "Initial Beneficiary" which initially owned 100% of the "Interests" in the DST Defendant.[11] The "whereas" clauses of the Trust Agreement reflect, however, that:

> it is anticipated that certain Persons will purchase Interests in exchange for payment of money and become Investors as such terms are defined herein pursuant to a private placement of Interests, and such proceeds shall be used by the Signatory Trustee to replace certain interest of the Initial Beneficiary and for payment of expenses and fees as set forth in the Private Placement Memorandum.[12]

---

[9] Compl. Ex. B.

[10] Compl. Ex. B, § 7.02. Investors include the Initial Beneficiary, the Plaintiff, to the extent it retains an interest and each holder of beneficial ownership interests. Compl. Ex. B, p 2.

[11] Compl. Ex. B, p 1.

[12] *Id.*

The Plaintiff, thus, acquired 100% of the beneficial interests in the DST Defendant by virtue of its capital contribution, subject to replacement of those interests through sales and repayment, also known as redemption.

This links to the Private Placement Memorandum for the DST Defendant (the "PPM"). The PPM reflects the same agreement that "[p]rior to the sale of Interests to Investors, [the Plaintiff, as] the Initial Beneficiary . . . will own 100% of the beneficial interests in" the DST Defendant.[13] The offer to sell as reflected in the PPM reflects that those interests will be replaced as interests are sold to "Investors," and only "[i]f any Interests cannot be sold, [the Plaintiff, as] the Initial Beneficiary and its affiliates will own the remaining Interests."[14] The summary of the offering explains that "[t]he proceeds of the Offering will be used, in part, to return to the Initial Beneficiary its capital contributions and to reduce the Interests held by the Initial Beneficiary, provided that, in all cases, if any Interests in the Trust cannot be sold, the Initial Beneficiary and its affiliates will own the remaining Interests."[15]

The final agreement emphasized by the Plaintiff is the lease for the Hayworth Property (the "Master Lease Agreement"). The DST Defendant, as the landlord, and the Master Tenant Defendant, as the tenant, executed the Master Lease Agreement

---

[13] Compl. Ex. A, p ii.

[14] *Id.*

[15] *Id.* at 1.

on June 30, 2022.[16] Through the Master Lease Agreement, the Master Tenant Defendant is entitled to a disposition fee, as defined and limited therein, which is payable to the Plaintiff under the Master Tenant Defendant's side letter agreement with the Plaintiff (the "Side Letter Agreement").

### C. The Dispute

The Plaintiff contends that the Signatory Trustee Defendant has facilitated the sale of over $37 million of the nearly $78 million in beneficial interests in the PPM. From those sales, the Signatory Trustee Defendant has paid the Bridge Lender "its allocated net proceeds corresponding to the sale of approximately $20.1 million in beneficial interests to outside investors."[17] Per the Plaintiff's interpretation of the Trust Agreement and PPM, the Signatory Trustee Defendant was then required to redeem the corresponding interests for the Plaintiff but failed to do so. Rather, the Plaintiff pleads that the Signatory Trustee Defendant "divert[ed] the DST Defendant's proceeds for improper uses in order to personally enrich the Signatory Trustee Defendant's managers and the managers' affiliated entities[.]"[18]

---

[16] Compl. Ex. C.

[17] Compl. ¶ 30.

[18] Compl. ¶ 33.

### D. Procedural Posture

With a sale of the Hayworth Property seemingly imminent, the Plaintiff initiated this action on June 30, 2025.[19] In its complaint, the Plaintiff pleads five counts for (1) breach of the Trust Agreement by the Trust Defendants, (2) breach of fiduciary duties by the Signatory Trustee Defendant, (3) breach of the implied covenant of good faith and fair dealing by the Signatory Trustee Defendant, (4) declaratory judgment against the Trust Defendants, and (5) declaratory judgment against the Master Tenant Defendant.

Premised on these claims, the Plaintiff seeks (1) declarations that it retains no less than 60% of the beneficial interests in the DST Defendant and that the Master Tenant Defendant must pay to and deposit with the Plaintiff the disposition fee, (2) a constructive trust over the DST Defendant, (3) injunctive relief prohibiting the distribution of the sale proceeds from the sale of the Hayworth Property, and (4) an award of fees, costs, and expenses, among other relief the Court deems just and proper.

With its complaint, the Plaintiff filed motions for a temporary restraining order and expedited proceedings (the "Expedited Motions").[20] The Defendants

---

[19] *See* Compl. ¶ 35–36 (pleading that the Hayworth Property was listed for sale on or about May 8, 2025 and at least three "best and final" offers were submitted by May 29, 2025).

[20] D.I. 2–3.

opposed those motions and, on July 30, 2025 filed a motion to dismiss or stay (the "Motion").[21]

The Chancellor heard the Expedited Motions on August 1, 2025.[22] At that hearing, the Chancellor (1) denied the motion for a temporary restraining order, (2) set forth notice and timing requirements for any sale of the Hayworth Property, and (3) directed the parties to confer on scheduling.[23] The Chancellor ultimately approved a schedule to complete briefing on the Motion by October 10, 2025, with oral argument on January 15, 2026.[24]

As explained above, this action was then reassigned to me on October 1, 2025. After reassignment, I granted the motion to stay discovery and tried, unsuccessfully, to work with the parties to reschedule the January oral argument date to an earlier date.[25] Then, on January 8, one week before oral argument, counsel for the Defendants moved to withdraw (the "Motion to Withdraw"). I set forth a schedule for the Motion to Withdraw, cancelled oral argument, and took the Motion under advisement.

---

[21] D.I. 22.

[22] *See* D.I. 25.

[23] D.I. 22, 29.

[24] D.I. 31, 38.

[25] *See* D.I. 48 Ex. 2.

## II.     ANALYSIS

Through this ruling, I dispose of both the Motion and the Motion to Withdraw. The Motion is denied; the *McWane* doctrine does not require a dismissal or stay of this action pending the New York Action and the Plaintiff has stated cognizable claims for relief. The Motion to Withdraw is granted and the Defendants have 10 days to secure successor counsel and answer the complaint; on day 11, the stay of discovery will be lifted, and the Plaintiff may, if and as necessary, move for relief.

### A.     The Motion is denied.

The Defendants seek dismissal under Court of Chancery Rule 12(b)(3) and 12(b)(6). For the former, they argue that the *McWane* doctrine requires dismissal. For the latter, they argue the Plaintiff has failed to state viable claims for relief. I disagree with both arguments. The Motion is denied.

#### 1.     *McWane* does not require a dismissal or stay of this action.

Under Court of Chancery Rule 12(b)(3), this Court will dismiss or stay a case for improper venue or forum. In deciding whether to do so here, I am not limited to the Plaintiff's complaint and am permitted to consider extinct evidence relevant to the *forum non conveniens* analysis.[26]

---

[26] *See Troy Corp. v. Schoon*, 2007 WL 949441, at *2 (Del. Ch. Mar. 26, 2007) ("Under this standard, the court 'is not shackled to the plaintiff's complaint' and 'is permitted to

Where, like here, the request for dismissal is premised on a first-filed action in another forum, I am guided by the *McWane* doctrine, which asks: "(1) is there a prior action pending elsewhere; (2) in a court capable of doing prompt and complete justice; (3) involving the same parties and the same issues?"[27] Although (1) is established, (2) and (3) are lacking; the New York court cannot do complete justice for the issues raised in this action, which are materially distinct from those pending in the New York Action.

Although not included in my factual recitation, I have received and reviewed extrinsic information relevant to this portion of the Motion. Specifically, the Defendants attached to the Motion: (a) the first amended complaint in the New York Action, (b) the first amendment to the loan agreement at issue therein, and (c) an order in the New York Action summarizing the May 1, 2025 status conference.[28] The Defendants also provided an affidavit from the owner and manager of the Signatory Trustee Defendant averring that "[t]here is currently no offer under

---

consider extrinsic evidence from the outset.'") (quoting *Simon v. Navellier Series Fund*, 2000 WL 1597890, at *5 (Del. Ch. Oct. 19, 2000)).

[27] *LG Elecs., Inc. v. InterDigital Commc'ns, Inc.*, 114 A.3d 1246, 1252 (Del. 2015).

[28] D.I. 36 Ex. A–C.

consideration for the purchase or sale of the Hayworth Property[,]" and a sale may well be years away.[29]

Even considering this expanded record, however, the request for a dismissal or stay must fail. The New York Action is much broader than the present action, involving four statutory trusts, not just the one at issue here. The claims and ultimate legal issues are also distinct. Here, the Plaintiff alleges breaches of the Trust Agreement, implied covenant therein, and fiduciary duties. At issue through those claims and the declaratory judgment claims, is the level of the Plaintiff's percentage ownership in the DST Defendant, per the Trust Agreement and PPM, and whether the Plaintiff is entitled to the disposition fee under the Side Letter Agreement. None of those agreements or issues will be decided in the New York Action, which will turn on that court's interpretation of other agreements termed in the briefing before me as the Bridge Financing Agreement and the Bridge Financing Guaranty. There is insufficient overlap to justify a dismissal or stay of this action.[30]

---

[29] D.I. 42 (Affidavit of Blake Wettengel in Support of Motion to Dismiss).

[30] *See, e.g.*, *Shafi v. Chien*, 2025 WL 671854, at *22 (Del. Ch. Mar. 3, 2025) (declining to dismiss or stay in favor of a first-filed action where, despite overlapping facts, the claims were distinct and the parties dissimilar). The Defendants argue that this case and the New York Action have substantial or functionally identical issues or claims. I disagree. Unlike in *EnVen Energy Corp. v. Dunwoody*, where the same alleged scheme in the second action was directly relevant to claims in the first, the two actions here turn on separate and distinct agreements amongst different parties. 2020 WL 2770609 (Del. Ch. May 28, 2020).

Several other cases relied on by the Defendant are distinguishable. In *MICH II Hldgs. LLC v. Schron*, this Court found that a decision in the first-filed action had the

### 2. The Plaintiff's claims are reasonably conceivable and survive the pleadings.

The Defendants, alternatively, seek dismissal of the Plaintiff's claims under Court of Chancery Rule 12(b)(6).[31] As explained above, the Plaintiff pled five counts for (1) breach of the Trust Agreement by the Trust Defendants ("Count One"), (2) breach of fiduciary duties by the Signatory Trustee Defendant ("Count Two"), (3) breach of the implied covenant of good faith and fair dealing by the Signatory Trustee Defendant ("Count Three"), (4) declaratory judgment against the Trust Defendants ("Count Four"), and (5) declaratory judgment against the Master Tenant

---

potential to resolve several, if not all, of the claims and issues presented in the second action. 2012 WL 2499507 (Del. Ch. June 29, 2012). Not so here, where a decision in the New York Action will not affect the issues and claims before me. In *Landesbank Baden-Wurttemberg v. Walton Seattle mezz Hldgs. VI-B, LLC*, this Court stayed the action "because [the plaintiff] is attempting to assert an issue here, as a declaratory judgment action, which should have been asserted in opposition to the relief sought in the [first action]." 2013 WL 1286192, *10 (Del. Ch. Apr. 1, 2013). No such overlap exists here, where the claims and potential defenses are distinct. Finally, the Defendants point me to *Brookstone P'rs Acq. XVI, LLC v. Tanus*, where the Court found the two actions required interpretation of the same contracts and same sections within. 2012 WL 5868902 (Del. Ch. Nov. 20, 2012). As discussed, there are different agreements at issue in this action and the New York Action. As such, the cases relied on by the Defendants are distinguishable.

[31] This Court's analysis under Rule 12(b)(6) is settled: "(i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are well-pleaded if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (iv) dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof." *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (internal quotations omitted).

Defendant (together with Count Four, the "Declaratory Judgment Counts"). I address these in turn.

The Plaintiff pled a viable breach-of-contract claim in Count One. The Defendants argue that the Plaintiff failed to sufficiently identify the contractual term(s) allegedly breached because it did not cite a specific provision of the Trust Agreement. But this is a notice pleading state and the Plaintiff pled: (1) the existence of a contractual obligation in the Trust Agreement, which expressly incorporates the PPM,[32] (2) alleged conduct that diverged from that obligation supporting a reasonably conceivable showing of breach, and (3) a cognizable injury. That is sufficient.[33]

---

[32] Specifically supporting the Plaintiff's theory that the Trust Agreement, by its plain and unambiguous terms, (1) sets forth the parties' intention that, as the Signatory Trustee Defendant sells interests in the DST Defendant to outside investors, the Signatory Trustee Defendant shall use such proceeds to redeem the Plaintiff's interest and (2) obligates the Signatory Trustee Defendant to comply with the provisions of the PPM regarding new investors and the corresponding repurchase and redemption of the Plaintiff's interest. This interpretation is reasonably conceivable and should survive the pleadings.

[33] *See Namdar v. Fried*, 340 A.3d 1184, 1193 (Del. Ch. 2025). The Defendants rely on *BET FRX LLC v. Myers*, where the Court granted a motion to dismiss because the plaintiff conceded that "the Amended Complaint does not identify any provision of the LLC Agreement that Defendants allegedly breached." 2022 WL 1236955, at *4 (Del. Ch. Apr. 27, 2022). But, here, the Plaintiff pled the specific contractual obligation the Defendants allegedly breached.

The Plaintiff also pled a viable breach of fiduciary duty claim, which should survive notwithstanding the contract claim. The Defendants argue that there is no daylight between the contract claim and fiduciary duty claim and that the Plaintiff's attempt to repackage contract as equity should not be countenanced. The Defendants are correct that this Court will dismiss purported fiduciary duty claims that sound solely in contract.[34] But fiduciary duty claims are not barred by contract claims when there is an "independent basis for the fiduciary duty claims apart from the contractual claims."[35] "To determine whether there is an independent basis for fiduciary claims arising from the same general events, the Court inquires whether the fiduciary duty claims depend on additional facts as well, are broader in scope, and involve different considerations in terms of a potential remedy."[36] Thus, "the appropriate question [] is whether there exists an independent basis for the fiduciary duty claims apart from the contractual claims, even if both are related to the same or similar conduct."[37]

---

[34] *See Solow v. Aspect Res., LLC*, 2004 WL 2694919, at *4 (Del. Ch. Oct. 19, 2004).

[35] *Renco Grp., Inc. v. MacAndrews AMG Hldgs. LLC*, 2015 WL 394011, at *7 (Del. Ch. Jan. 29, 2015).

[36] *Id.* (internal citations omitted).

[37] *PT China LLC v. PT Korea LLC*, 2010 WL 761145, at *7 (Del. Ch. Feb. 26, 2010).

Here, the Plaintiff's breach of contract and breach of fiduciary duty claims are distinct. The contractual breach arises from the alleged failure to redeem, while the fiduciary lens focuses on alleged misappropriation of trust proceeds. This is not a situation where the pleader is attempting to duplicate claims or convert contractual claims as or into equitable claims; the equitable claim is distinct and well placed given the Signatory Trustee Defendant's fiduciary role and consequent duties. The breach of fiduciary duty claim should survive the pleadings.[38]

The Defendants seek dismissal of the Plaintiff's alternatively pled implied covenant claim for similar reasons; arguing that there is no gap to fill. Like with the above, this Court will dismiss implied covenant claims where the implied covenant claim duplicates breach of contract claims.[39] But here the Plaintiff is challenging actions that have an arguably discretionary component which the Plaintiff alleges,

---

[38] The Defendants' authorities are distinguishable. For example, *Renco Gp., Inc. v. MacAndrews AMG Hldgs. LLC* involved pleadings where "the facts and harms cited in support of the fiduciary claims appear to be the same ones that underlie the breach of contract claims." 2015 WL 394011, at *8 (Del. Ch. Jan. 29, 2015). Not so, here. Likewise, in *Grayson v. Imagination Station, Inc.* and *MHS Cap. LLC v. Goggin*, this Court held that all the alleged conduct that could possibly form the basis of a fiduciary duty claim was explicitly covered by the underlying agreements, and therefore there was no independent basis for the fiduciary claim to stand on. 2010 WL 3221951 (Del. Ch. Aug. 16, 2010); 2018 WL 2149718 (Del. Ch. May 10, 2018). Here, the Trust Agreement does not fully displace the Signatory Trustee Defendant's common law fiduciary duties as trustee and the Plaintiff pled an independent basis for its fiduciary duty claim.

[39] *See Bandera Master Fund LP v. Boardwalk Pipeline P'rs, LP*, 2019 WL 4927053, at *22 (Del. Ch. Oct. 7, 2019); *Kuroda v. SPJS Hldgs., LLC*, 871 A.2d 872, 888 (Del. 2009) ("The implied covenant cannot be invoked to override the express terms of the contract.").

with support, was exercised in bad faith. The Plaintiff advocates against dismissal arguing that if the Court ultimately disagrees with the Plaintiff's contractual interpretation, there is an implied obligation inherent in the parties' bargain, which should be equitably enforced. The implied covenant claim is well pled and should survive the pleadings as an alternative claim.

Finally, the Defendants argue that the Declaratory Judgment Counts are not ripe and fail unless all investors in the DST Defendant are included in this action, which the Defendants contend are indispensable parties. I disagree on both. To demonstrate that a declaratory judgment claim is ripe, a party must show the claim is not "contingent . . . [and requires] the occurrence of some future event before the action's factual predicate is complete."[40]  The Plaintiff did that through the factual averments supporting an upcoming sale and the Defendants' refusal to acknowledge or concede that the Plaintiff is entitled to the disposition fee, setting forth a ripe dispute when viewed under a commonsense lens. And, as to indispensable parties, the Defendants have failed to demonstrate that all investors must be joined when, on the record before me, it appears the Signatory Trustee Defendant, as the trustee for all beneficiaries of the trust, is able to fully represent the interests of those absent

---

[40] *Energy P'rs, Ltd. v. Stone Energy Corp.*, 2006 WL 2947483, at *7 (Del. Ch. Oct. 11, 2006).

parties. As this case develops, that may change and joinder may become necessary and appropriate, but for now, the request must be denied, and the lack of joinder does not support dismissal.[41]

\*     \*     \*

Under Court of Chancery Rule 12, my denial triggers a 10-day response period. Rule 12(a)(2)(A) provides: "if the Court denies the [Rule 12] motion or postpones its disposition until trial, the responsive pleading must be served within 10 days after notice of the Court's action[.]" The Defendants, thus, have 10 business days (per Court of Chancery Rule 6(a)(1)(B)) to answer the complaint.

---

[41] As for ripeness, the cases the Defendants rely on are at odds here. *See Multi-Fineline Electronix, Inc. v. WBL Corp. Ltd.*, 2007 WL 431050, at \*8 (Del. Ch. Feb. 2, 2007) (reasoning it was "literally impossible to predict" whether the challenged conduct would occur because the complaint was filed with "facially deficient, conclusory allegations to support [a] economically irrational theory"). For example, both *In re Ebix, Inc. S'holder Litig.*, 2014 WL 3696655 (Del. Ch. July 24, 2014) and *Tygon Peak Cap. Mgmt., LLC v. Mobile Inv. Investco, LLC*, 2022 WL 34688 (Del. Ch. Jan. 4, 2022) speak to the proposition that absent a pending transaction, there is no need for prompt resolution of a claim. But here, the Plaintiff has adequately pled a pending transaction—the upcoming sale.

For indispensable parties, the Defendants' cases fare no better. True, *Mooney v. Geriatric Servs. of Delaware, Inc.*, holds that a party was indispensable because it was the record owner of the property at issue. 2020 WL 7695643, at \*4 (Del. Ch. Dec. 28, 2020) And the Court in *S'holder Representative Servs. LLC v. RSI Holdco, LLC*, determined that a representative could not adequately represent the interest of absent parties that were outside the scope of the defined representation. 2019 WL 2207452, at \*4 (Del. Ch. May 22, 2019). But here, the Signatory Trustee Defendant, as trustee for all beneficiaries including the outside investors, can fully represent the absent investors in this action. *See Flerage v. KDI Corp.*, 1986 WL 1397, at \*6–7 (Del. Ch. Jan. 29, 1986) ("where an existing party is in a position to fully represent the interests of the absent persons, their joinder as parties is not necessary.").

### B.    The Motion to Withdraw is granted.

Counsel for the Defendants moved to withdraw one week before the scheduled oral argument. Despite notice and opportunity to do so, there has been no objection and the Plaintiff's concern about motive or delay is overcome by this merits-based decision. The Motion to Withdraw is granted for the reasons articulated therein. The Defendants, as entities, cannot, however, participate in this action except through Delaware counsel.[42] The Defendants are hereby given the same 10-day response window to secure successor counsel. If the Defendants do not timely secure successor counsel and answer the complaint, the Plaintiff may move for appropriate relief.

---

[42] *See Transpolymer Indus., Inc. v. Chapel Main Corp.*, 582 A.2d 936 (Del. 1990) ("While a natural person may represent himself or herself in court even though he or she may not be an attorney licenses to practice, a corporation, being an artificial entity, can only act through its agents and, before a court only through an agent duly licensed to practice law.").

## III. CONCLUSION

For the foregoing reasons, the Motion is denied and the Motion to Withdraw is granted. The Defendants have 10 business days to secure successor counsel and answer the complaint. On day 11 (February 2, 2026), the stay on discovery will be lifted. This is a magistrate's report under Court of Chancery Rule 144 and exceptions are stayed per Rule 144(c)(2)(A).

Respectfully,

*/s/ Selena E. Molina*

Senior Magistrate in Chancery